Commonwealth *v.* Reginelli, Appellant.

Argued June 20, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Frank M. Jakobowski,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Joseph M. Smith,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 15, 1966:

Angelo A. Reginelli and Herbert Price were found guilty of arson after their cases were consolidated for trial before the Hon. EDWARD J. GRIFFITHS, sitting without a jury. Each appeals from the sentence imposed after his motions in arrest of judgment and for a new trial were overruled. This opinion decides Reginelli's appeal; Price's appeal is the subject of a separate opinion filed today, *Commonwealth v. Price,* 208 Pa. Superior Ct. 354, 222 A. 2d 610 (1966).

At about 9 p.m. on Saturday, July 1, 1961, a fire occurred in Reginelli's shoe repair shop and leather goods store, located at 6545 Roosevelt Boulevard, Philadelphia, Pennsylvania. Reginelli had locked up the store between 8 and 8:30 p.m. and left the premises.

At the trial, Lieutenant Purnell B. Short, a member of the Philadelphia Fire Department for eighteen years and an investigator for the Philadelphia Fire Marshal's office for five years, investigating about 500 fires each year, testified that it was his opinion that the fire was incendiary in origin. The Commonwealth also presented evidence that on May 24, 1961, about five weeks before the fire, Reginelli had caused the insurance on the contents of his store to be increased from $6,000 to $31,000, and that on June 28, 1961, three days before the fire, a distraint for rent in the amount of $950 had been issued against him.

A Commonwealth witness, Edward Klayman, then testified that he was introduced to Reginelli in the early part of July, 1961 by a friend, Norman Prussell, who subsequently died in 1963. On that date Klayman overheard a conversation in which Reginelli told Prussell that he had been questioned by the Fire Marshal's office and that he was very worried about the view they took concerning the fire. Klayman said that he then drove Prussell and Reginelli to meet Price at a luncheonette near the Einstein Medical Center on Fifth Street. According to Klayman the four proceeded to Fifth and Chestnut Streets, at which point Reginelli, Price and Prussell left the automobile and came back within ten or fifteen minutes. After returning to the car, the two appellants and Prussell divided the sum of $2,000 among themselves. According to Klayman, Reginelli was upset and said: ". . . now I don't have my business, I don't have a job, and I'm having trouble with my wife. The Fire Marshals are bothering me." Appellant Price then said to Reginelli: "You don't have to think about the prosecution. They don't know what's in your mind. You are insured for arson. But we are professionals. We know what we use, and its undetectable, believe me."

Reginelli took the stand and testified that on July 5, 1961 he went to an insurance adjuster by the name of Feinstein, located at Fifth and Chestnut Streets, who advanced him $2,000 in check form and for that $2,000 he retained Feinstein to adjust his claim. He then went to the Central Penn National Bank and cashed the $2,000 check. He denied that he ever saw or knew Klayman or Price prior to his arrest, which occurred in 1964. He testified that there was no one with him when he picked up the money. Price took the stand and testified that he never knew Reginelli and was never in his shoe store. He stated that he was friendly with Norman Prussell and had known Edward Klayman for twenty years. Both appellants denied setting the fire or causing the same to be set.

In rebuttal the Commonwealth called William Frith, a detective lieutenant in the Philadelphia Police Department, who had questioned Reginelli on July 15, 1964. The witness testified that Reginelli had told him during the interrogation that at the time of going to the insurance adjuster and receiving the $2,000 he was with Klayman, Prussell and Price. William Boardman, of the arson squad of the National Board of Fire Underwriters, also testified in rebuttal on behalf of the Commonwealth that at the interrogation Reginelli admitted that he knew Price and admitted being with Prussell, Klayman and Price the day he got the $2,000. At the interrogation, however, Reginelli did deny that he divided the $2,000 with anybody else and stated that he took the money and went by bus to New Jersey shortly after he cashed the check.

Reginelli appeals on the grounds that the evidence was insufficient to sustain the conviction, that the testimony of Edward Klayman should have been stricken by the court below because the witness was incompetent, and that his constitutional rights were violated because at the time of the interrogation he was not ad-

vised of his right to counsel or the reason for his arrest or of his right to remain silent.

## I.

The test of the sufficiency of the evidence, irrespective of whether it is direct or circumstantial, is whether accepting as true all of the evidence upon which, if believed, the trier of fact could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Whiting,* 409 Pa. 492, 187 A. 2d 563 (1963). After a verdict of guilty, we accept as true all of the Commonwealth's evidence upon which, if believed, the jury (or a judge sitting as a jury) could have properly based its verdict and it is well settled that a jury or a trial court can believe all or a part of or none of a defendant's statements, confessions or testimony, or the testimony of any witness. *Commonwealth v. Kirkland,* 413 Pa. 48, 195 A. 2d 338 (1963). As was said by Judge WRIGHT in *Commonwealth v. McLaughlin,* 202 Pa. Superior Ct. 520, 524, 198 A. 2d 419 (1964), a case heard by a judge where a jury trial was waived: "The credibility of the witnesses was for the trial judge, and we must now view the evidence in the light most favorable to the Commonwealth." Viewed in this light, the evidence is sufficient to sustain the conviction.

In an arson case the corpus delicti is established when it is shown that there has been a fire of incendiary origin. *Commonwealth v. Nasuti,* 385 Pa. 436, 123 A. 2d 435 (1956). The corpus delicti can be proved by circumstantial evidence and expert testimony as to the incendiary origin of the fire is admissible. Id. The expert in this case, Lieutenant Short, was well qualified to give an expert opinion both by training, which included in-service training and seminars at Purdue

University, and by actual experience. His opinion that the fire was of incendiary origin was based on his finding that there were two separate fires not physically connected, that there was evidence of flammable liquid at both fires, and that there was a torching effect on the front of the store indicating a rapid and severe type of fire. Appellant complains that the court below believed Lieutenant Short's testimony that the fire was of incendiary origin when there were other facts present which tended to show that the fire was accidental. Some of those facts were that there were flammable liquids and materials present in the shoe shop and used in the business of shoe repairing, that a partition separating the two fires did not go to the ceiling and that the fire was gotten under control in approximately thirty minutes. However, there was nothing to show that any of the liquids in the store had been spilled or had caught fire and the facts were simply ones which went to the weight of the Lieutenant's testimony and were for the resolution of the court below sitting as judge and jury. We are satisfied that Lieutenant Short's testimony was sufficient to support a finding that the fire was of incendiary origin.

## II.

Appellant complains that Klayman's testimony should not have been considered by the court because Klayman was incompetent. Since the Act of May 23, 1887, P. L. 158, §1, 19 P.S. §681, all persons, with certain enumerated exceptions not here relevant, are fully competent witnesses in any criminal proceeding unless the contrary can be shown and the burden of proving incompetency is upon the person asserting it. *Commonwealth v. Carey*, 105 Pa. Superior Ct. 362, 161 A. 410 (1932). Neither Reginelli nor Price has pointed to any rule of law, statutory or otherwise, which would

make Klayman incompetent. They point to the fact that Klayman had been convicted of using narcotics, that he was taking a drug, Dolophine, at the time he overheard the damaging conversations, and that at the time he testified he had pending against him a probation violation, a narcotics charge, and three arson charges, none of which had any connection with the burning of Reginelli's store. A witness is not rendered incompetent by a conviction of a crime other than perjury or subornation of perjury, *Commonwealth v. Clemmer*, 190 Pa. 202, 42 A. 675 (1899); by the use of narcotics, *Commonwealth v. Farrell*, 319 Pa. 441, 181 A. 217 (1935); *Commonwealth v. Aikens*, 179 Pa. Superior Ct. 501, 118 A. 2d 205 (1955); or by the fact that criminal charges are pending against him. The weight to be given Klayman's testimony was for the determination of the court below sitting as a jury, who heard all these facts about the witness and observed his demeanor and other traits. *Commonwealth v. Farrell*, supra. The court below would have been in error had it declared Klayman an incompetent witness and we see no reason to disturb its decision as to the weight given his testimony.

Klayman's testimony as to the visit to the insurance adjuster and the division of the $2,000 along with the conversation accompanying it, together with Reginelli's increase of the fire insurance five weeks before the fire and the fact that a distraint had been issued against him three days before the fire, although all items of circumstantial evidence, convinced the trial court of Reginelli's guilt beyond a reasonable doubt. As the Court said in *Commonwealth v. Nasuti*, supra at p. 445: "All that is required is that, the evidence being circumstantial, the circumstances proved should be such as reasonably and naturally to justify an inference of the guilt of the accused, and of such volume and quality as to overcome the presumption of inno-

cence and satisfy the jury of the accused's guilt beyond a reasonable doubt." We will not disturb the verdict of the lower court.

## III.

Reginelli's complaint that his "constitutional rights were violated" has no merit. He argues that the lower court permitted testimony by two police officers and Mr. Boardman concerning some of his answers given during questioning that took place in the absence of an attorney after he was arrested. First we note that the testimony was offered in rebuttal. Secondly, the statements objected to were not a confession of guilt. They were statements of Reginelli, made to Detective Frith and testified to by Frith, that he was with Klayman, Price and Prussell at the time he went to the insurance adjuster and received the $2,000. In addition it was brought out in this rebuttal testimony that during the questioning Reginelli always denied causing the fire or causing anyone else to set the fire and said that he didn't know anything about how it started. Thirdly, trial counsel did not object to the admission of the rebuttal testimony when it was being offered but later moved to strike it during argument to the court. Failure of Reginelli's counsel to make a timely objection at trial, waiting instead until he heard all the testimony and then moving to strike, indicates that he might have willingly permitted the testimony since some of it was favorable to his client's case. However, we will not rest our decision on this point for even if we assume that appellant's constitutional right to the assistance of counsel during the accusatory stage of interrogation was violated[1] and that the motion to strike constitutes

---

[1] In so assuming, we are not so deciding. The testimony as to whether or when appellant requested counsel and whether or when he was advised of his right to have counsel during the questioning

sufficient objection, it is clear that the testimony was admissible to impeach appellant's credibility after his trial testimony in which he denied that he ever saw or knew Klayman before his arrest in 1964 and testified that no one was with him when he picked up the money.

In *Walder v. United States,* 347 U.S. 62, 74 S. Ct. 354, 98 L. ed. 503 (1954), the Supreme Court held that the prosecution may make use of unlawfully obtained evidence in testimony to impeach a defendant's credibility after he opens the door on direct examination by making assertions which go beyond the denial of complicity in the crime charged. In *Commonwealth v. Wright,* 415 Pa. 55, 202 A. 2d 79 (1964), our Supreme Court set forth three conditions under which illegally or unconstitutionally obtained evidence may be used for impeachment purposes. The conditions are: "(1) The defendant must elect to take the stand; (2) His testimony which conflicts with the illegally secured evidence must do more than deny the elements of the crime for which he is being tried; (3) The inadmissible evidence should be received only to the extent that it does not admit the very acts which are essential elements of the crime charged: Walder v. United States, supra." *Commonwealth v. Wright,* supra at p. 60. All of these conditions were met in this case.

Reginelli voluntarily took the stand and, much like the defendant in *Walder,* who testified on direct examination that he had never sold any narcotics to anyone in his life and had never had any narcotics in his possession, other than physician prescribed, Reginelli testified that he had never seen Klayman until he was

is very unclear and conflicting. In light of the doubt we have as to whether the rule of *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965), must now be applied to this case, tried in May, 1965 (see fn.2 in *Commonwealth v. Vivian,* 208 Pa. Superior Ct. 330, 338, 222 A. 2d 739 (1966), filed today), we will not make our decision hinge on the application or nonapplication of *Negri.*

arrested in 1964, had never seen Price either on or before the date of the visit to the insurance adjuster, and was alone when he picked up the money from the adjuster. As discussed above, the rebuttal testimony at issue was not a confession or admission of any act which was an essential element of the crime of arson. Thus, even assuming that the testimony would not be admissible as part of the Commonwealth's case in chief, it became admissible to impeach when appellant opened the door by his sweeping denials of knowledge of Klayman and Price. As the United States Supreme Court aptly said in *Walder,* supra at p. 65, "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."

Judgment of sentence affirmed and it is ordered that the appellant appear in the court below at such time as he may be there called and that he be by that court committed until he shall have complied with his sentence or any part thereof which had not been performed at the time the appeal in this case was made a supersedeas.