Commonwealth *v.* Burkett, Appellant.

Argued September 14, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Thomas Kellogg,* Assistant Defender, with him *Leonard Lieberson* and *Melvin Dildine,* Assistant Defenders, and *Herman I. Pollock,* Defender, for appellant.

*Michael M. Baylson,* Assistant District Attorney, with him *Michael J. Rotko* and *Alan J. Davis,* Assistant District Attorneys, *Richard A. Sprague,* First As-

sistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., November 16, 1967:

After waiving a jury trial, appellant was tried on October 31, 1966, before the Honorable GREGORY G. LAGAKOS and found guilty of rape, aggravated robbery, aggravated assault and battery, and conspiracy. He appeals from the judgment of sentence.

Appellant's sole argument before this court is that the lower court erred in permitting the assistant district attorney to cross-examine him regarding his statement to the police when the statement was inadmissible for failure to give the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). The inadmissibility is apparently admitted by the Commonwealth which withdrew the statement, after objection, when it was offered in its case in chief.

On direct examination the twenty-one year old appellant testified that the prosecutrix had an accident with her automobile and asked for help. He said that he volunteered and at her request drove her automobile away from the scene of the accident. He testified that while in the car she told him that her boy friend had beaten her, that she liked boys, and would give him money and other gifts. Appellant further testified on direct examination that the prosecutrix then offered herself to him sexually and that he got into the back seat of the car with her but left without having intercourse because he was repelled by her body odor. On cross-examination appellant was asked, over objection, if he had told police the same story that he had told the court on direct examination. Appellant admitted that he had not given the same story to the police.

The effect of this question and answer was to demonstrate to the fact finder, in this case the judge,

that the statement appellant had given to the police was at variance with his oral testimony. Since the variance was not limited by the question or the answer, the judge might well have concluded that appellant's statement to the police admitted some or all of the essential elements of the crimes charged. It is obvious that the statement itself, which we have never seen, could not have been admitted into evidence for that purpose as part of the Commonwealth's case or on rebuttal. The effect of this question and answer was to do indirectly what the Commonwealth could not do directly, *i.e.,* to force the appellant to incriminate himself.[1] "The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination." *Miranda v. Arizona,* 384 U.S. at 476, 16 L. Ed. 2d at 725. To permit this question and answer was reversible error.

Appellee argues that this case is controlled by our recent decision in *Commonwealth v. Reginelli,* 208 Pa. Superior Ct. 344, 222 A. 2d 605 (1966). We disagree. In *Reginelli* we followed by analogy *Walder v. United States,* 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354 (1954), in holding that the prosecution may make use of an unlawfully obtained statement to impeach a defendant's credibility after he opens the door on direct examination by making assertions which go beyond the denial of complicity in the crime charged.[2] *Walder v. United States,* supra, held that where a defendant goes

---

[1] On direct examination the appellant never referred to his statement and did nothing to justify cross-examination in regard to the statement. Under such circumstances merely taking the stand cannot be considered a waiver of his constitutional protection against self-incrimination. See *Agnello v. United States,* 269 U.S. 20, 70 L. Ed. 145, 46 S. Ct. 4 (1925).

[2] For a similar application of the rule of *Walder* to an inadmissible statement see *Tate v. United States,* 283 F. 2d 377 (D.C. Cir. 1960).

beyond a mere denial of complicity in the crimes with which he is charged the prosecution may introduce unlawfully seized evidence in rebuttal for impeachment purposes.

In *Commonwealth v. Wright,* 415 Pa. 55, 202 A. 2d 79 (1964), in analyzing *Walder,* Justice EAGEN speaking for our Supreme Court said:

"To make such evidence available for impeachment purposes and thereby constitute a waiver by the defendant of his constitutional protection against its use, three conditions are essential: (1) The defendant must elect to take the stand; (2) His testimony which conflicts with the illegally secured evidence must do more than deny the elements of the crime for which he is being tried; (3) The inadmissible evidence should be received only to the extent that it does not admit the very acts which are essential elements of the crime charged: Walder v. United States, supra." 415 Pa. at 60, 202 A. 2d at 81.

In *Reginelli* we held that the conditions required to make such evidence available had been met but they were not present here.[3] Nowhere in the record does it reveal what testimony of the appellant the district attorney intended to impeach. It is essential that the inconsistency be pinpointed in order to determine if the alleged perjury does more than deny the elements of the crime and meets the second condition. Nor has the third condition been met, for, as we pointed out above, the question and answer were received without limitation and might well have been interpreted as an admission of the essential elements of the crimes charged.

Appellant's direct testimony lacked the type of sweeping assertions or broad statements found in *Wal-*

---

[3] We need not presume to decide whether *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), overrules *Walder v. United States,* 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354 (1954), as argued by the appellant.

*der* and *Reginelli*. His direct examination consisted of a denial of the elements of the crimes with which he was charged, his denial taking the form of his version of what happened on the night in question. The question and answer should have been excluded under the general rule set forth in *Walder*, that "the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." 347 U.S. at 65, 98 L. Ed. at 507. Neither *Walder* nor *Reginelli* governs the factual situation of this case.

Judgment reversed and new trial granted.

WRIGHT and WATKINS, JJ., would affirm on the opinion of Judge LAGAKOS.

---

CONCURRING OPINION BY HOFFMAN, J.:

The only question presented in this appeal is whether it was error to permit the Commonwealth to impeach the defendant's credibility by introducing statements elicited by the police without *Miranda* warnings.[1] The Commonwealth conceded that the statements were inadmissible as part of its case in chief.

I concur with the Majority opinion which precludes the prosecution from making use of the suppressed evidence under the guise of impeaching the defendant. I cannot agree with the conclusion of the majority, however, that if the statements conformed to the standards set forth in *Commonwealth v. Wright*, 415 Pa. 55, 202

---

[1] The defendant was questioned by two police officers but had not been given the prior warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). At trial, the Commonwealth sought to introduce the inculpatory statements, but the lower court properly suppressed them because they were not obtained through proper means.

A. 2d 79 (1964), they would be admissible.[2] In my opinion, the lower Court, in permitting the cross-examination of defendant as to inconsistent statements made to the police, violated his privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Supreme Court's opinion in *Miranda* clearly states that unless a defendant is informed of and waives his constitutional rights, an improperly obtained statement cannot be used against him for any purpose, including impeachment. The Court stated in *Miranda*, supra, at 477:

"... Statements ... by the defendant *are often used to impeach his testimony at trial* or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement." [Emphasis added] The Court further stated that: "... unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." at 479 [Emphasis added].

The import of this language is that the Commonwealth may not seek to utilize an improperly obtained and, therefore, inadmissible statement for any purpose. More specifically, it means the defendant cannot be cross-examined with reference to the contents of the

---

[2] In *Wright*, the Supreme Court set forth three conditions which must be satisfied in order to make suppressed evidence available for impeachment. These essential requirements are that:

"(1) The defendant must elect to take the stand;

"(2) His testimony which conflicts with the illegally secured evidence must do more than deny the elements of the crime for which he is being tried;

"(3) The inadmissible evidence should be received only to the extent that it does not admit the very acts which are essential elements of the crime charged." at 60.

statement in an attempt to reveal a prior inconsistent statement.

In the present case, the cross-examination of defendant elicited answers indicating that an inconsistent statement was given to the police. Since defendant had given another account of the incidents on direct examination, the inconsistent statement amounted to a confession in the eyes of the jury.[3] I find no language in *Miranda* and the exclusionary rule therein which allow the use of illegally obtained statements for any purpose.[4]

The Commonwealth places great emphasis on *Walder v. United States,* 347 U.S. 62, 65 (1954), which has been accepted in Pennsylvania in *Commonwealth v. Wright,* supra. In *Walder,* the defendant was indicted in 1950 on narcotics violations. Before trial he moved to suppress certain evidence. The motion was granted and the case was dismissed for lack of sufficient evidence. In 1952, the defendant was again in-

---

[3] There is no distinction between telling the jury of the existence of a confession and disclosing the details. Here there was only mention of an inconsistent statement which amounted to a confession, but no details were given. See *Gaertner v. State,* 35 Wis. 2d 159, 150 N.W. 2d 370 (1967).

[4] I do not purport to deal with the situation where a defendant, while on direct examination, refers specifically to a prior written or oral statement made to the police. In such circumstances, the illegally obtained statements can then be used to cross-examine the defendant because the defendant himself has initially produced the evidence. In other words, the defendant is deemed to have waived his constitutional right to object to use of the statement on cross-examination. See *State v. Ingle,* 64 Wash. 2d 491, 392 P. 2d 442 (1964). In circumstances similar to the instant case, however, no waiver issue is present because the defendant has not "opened the door" with regard to the suppressed evidence. In these latter type cases, the *Miranda* exclusionary rule was set forth to deter police activity in obtaining them and because they incriminate defendants who have *not* waived any of their constitutional rights.

dicted on drug charges. On direct examination, defendant testified that he had never possessed narcotics. The government rebutted the defendant's testimony by introducing the evidence suppressed in the 1950 indictment.

The Supreme Court's opinion, written by Mr. Justice FRANKFURTER, stated that a defendant is constitutionally guaranteed the right ". . . to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." at 65. However, the Court stated that the defendant could not resort to ". . . perjurious testimony in reliance on the Government's disability to challenge his credibility." at 65.

Since 1964, the *Walder* case has often been cited as authority by state and federal courts for receiving inadmissible evidence for impeachment purposes. See *Tate v. United States,* 283 F. 2d 377 (D.C. Cir. 1960); *Commonwealth v. Wright,* supra. In other words, *Walder* permitted the "poisoned tree" to produce a few edible apples.

To restrict the exclusionary rule to the Commonwealth's case in chief through *Walder* and *Commonwealth v. Wright,* supra, as the Commonwealth strenuously contends, would be inconsistent with the constitutional principles which are inherent in the *Miranda* case. *Miranda* proceeds on the assumption that the exclusionary rule is a necessary procedural safeguard to implement the substantive rights written into the Fourth, Fifth, and Sixth Amendments. Without such a rule, constitutional guarantees are empty promises. For example, overzealous police officers could freely interrogate suspects secretly, without counsel or *Miranda* warnings, if they feel the evidence might later be used to impeach the defendant. Moreover, the threat of these statements or confessions could be used to pre-

vent defendants from testifying when the Commonwealth knows that defendants have other evidence which might tend to absolve them from guilt. Thus, the United States Supreme Court has indicated that the exclusionary rule should not permit any exceptions in order to serve as an effective deterrent to illegal police activity.

Furthermore, *Miranda* is based in part on the recognition that such confessions or statements often lack verity. There is no reason to suggest that the statement is any more truthful when used for impeachment purposes.[5] A similar reason for exclusion is that any distinctions based on the prosecution's purpose in introducing the evidence are meaningless. "An incriminating statement is as incriminating when used to impeach credibility as it is when used as direct proof of guilt and no constitutional distinction can legitimately be drawn." *People v. Kulis,* 18 N.Y. 2d 318, 22 N.E. 2d 541 (1966), dissent by KEATING, J.; see also *Shephard v. State,* 88 Wis. 185, 59 N.W. 449 (1894).

In my opinion, therefore, to permit the Commonwealth to introduce illegally obtained statements, which may bear on appellant's guilt or innocence, in the guise of impeachment, would seriously jeopardize the important substantive policies and functions underlying the exclusionary rule and the "guilt by implication" doctrine clearly stated in *Miranda.* See *State v. Brewton,* 247 Or. 241, 422 P. 2d 581 (1967) ; *White v. United States,* 349 F. 2d 965 (D.C. Cir. 1965) ; *Inge v. Unit-*

---

[5] In *State v. Brewton,* 247 Or. 241, 422 P. 2d 581 (1967), the court found that the confession of the defendant was voluntarily made in the sense that it was not coerced. But, in light of the constitutional standards set forth in *State v. Neely,* 239 Or. 487, 503, 504, 395 P. 2d 557, 398 P. 2d 482, 486, 487 (1965), setting forth a similar exclusionary rule to that found in *Miranda,* the illegally obtained evidence could not be used to impeach the defendant's testimony.

*ed States,* 356 F. 2d 345 (D.C. Cir. 1966); *Johnson & Stewart v. United States,* 344 F. 2d 163 (D.C. Cir. 1964).

The Commonwealth further contends that the instant case falls within the guidelines for impeaching defendants set forth in *Commonwealth v. Wright,* supra, and followed in *Commonwealth v. Reginelli,* 208 Pa. Superior Ct. 344, 222 A. 2d 605 (1966), and *Commonwealth v. Price,* 208 Pa. Superior Ct. 354, 222 A. 2d 610 (1966). Those cases purported to follow the *Walder* decision. That decision and its relation to the instant case has been dealt with hereinabove.

I am unable to concur in the middle ground suggested in *Walder, Wright* and the majority opinion, to the effect that if a defendant merely takes the stand and denies his part in the crime he may not be impeached by the fruits of unconstitutional interrogation, but if he testifies about collateral matters or goes beyond mere denial he may be so impeached. "Such a rule would be virtually unworkable. The usual reason a defendant chooses to take the stand is to give the jury a comprehensive statement of his side of the story. Any story that would be responsive to the questions raised by the [Commonwealth's] case would tend to open up collateral matters and would invite impeachment. . . ." *State v. Brewton,* supra.

The cases in our Commonwealth have done nothing to clarify the meaning of "collateral matters." In *Commonwealth v. Wright,* supra, the Supreme Court found that the defendant did no more than deny commission of the crime. He did, however, give an account of the incidents surrounding the crime.[6] In *Commonwealth*

---

[6] See also, *Johnson and Stewart v. United States,* supra, where the defendant offered his own version of the events charged in the indictment and the court held that this was a "mere denial". The majority in the present case likewise finds that defendant's version of the crime amounted only to a denial.

*v. Reginelli,* supra, our Court held that the defendant went beyond mere denial by making sweeping claims that he did not know other persons. The distinction between "mere denial" and "sweeping claims" in my opinion, is meaningless.

In cases like *Reginelli,* where the evidence is used for impeachment, the defendant may try to rehabilitate himself by protesting that he was confused, misled, and frightened by the police because he received no *Miranda* warnings. This further testimony, although collateral to guilt or innocence will often taint anything else the defendant has previously stated and cause the jury to disbelieve him altogether. Presumably this is what the Supreme Court in *Miranda* had in mind when it spoke of "guilt by implication." Thus, the suppressed evidence is revivified by permitting its use for impeachment under the guise of a collateral issue.

Moreover, when suppressed evidence is admitted to impeach the testimony of a defendant, the jury is asked to perform the mental gymnastics of using that evidence solely to impeach his testimony but not for any substantive purpose. When the defendant takes the stand and the trial focuses on him, the task of separating his statements into these categories is practically an insurmountable task. In these circumstances, it is highly unrealistic to admit some suppressed evidence when there are "sweeping claims" and none when there are "mere denials". Such volatile evidence should not depend upon these vague and ambiguous terms.

In my view, circumvention of constitutional liberties is not to be encouraged by permitting the entry of illegally obtained evidence through the back door. The cross-examination of the appellant in this case does not concur with the *Miranda* decision which, in my view, set forth an exclusionary rule without exception.