Commonwealth *v.* Miller, Appellant.

Argued September 13, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Leon W. Silverman,* for appellant.

*Welsh S. White,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 21, 1967:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:
The sole question raised in this appeal is whether unconstitutionally obtained statements, taken without proper *Miranda* warnings, can be used to impeach a defendant's testimony on cross-examination.

The defendant was charged and convicted of robbery. He admitted driving the get-away car for one

Rudy Tilghman, but denied participation in the crime. The defendant, on direct examination, stated that he met Tilghman during a crap game the day of the robbery. Tilghman asked defendant to drive him home to get some money. The defendant further testified that he drove Tilghman to 22nd and York Streets, in Philadelphia, and stopped the car. Tilghman got out, came back and they drove off. Soon thereafter defendant heard shots. He said Tilghman then told him: "The cops is after both of us, and you are in this, too." Defendant stated he never saw the robbery and never intended to get involved in the robbery.

On cross-examination, the defendant was asked:

"Q. Did you know this fellow named Slim [nickname of Tilghman]?

"A. Do I know him?

"Q. Did you know him?

"A. No, sir.

"Q. Had you ever seen him before that particular day?

"A. I don't recall seeing him."

The lower court's opinion states that ". . . defendant . . . on cross-examination vigorously denied that he knew an individual by the name of Rudy Tilghman."

By way of rebuttal, the Commonwealth called a detective who testified that while the defendant was in custody, without *Miranda* warnings, he admitted having previously known Tilghman. Defense counsel promptly and strenuously objected to admission of this evidence on the ground that since it was unconstitutionally obtained, it was inadmissible for any purpose. The court overruled this objection on the strength of *Commonwealth v. Reginelli,* 208 Pa. Superior Ct. 344, 222 A. 2d 605 (1966).

For the reasons in my concurring opinion in *Commonwealth v. Burkett,* 211 Pa. Superior Ct. 299, 235

A. 2d 161 (1967), I feel that admission of such tainted evidence flies in the teeth of the *Miranda v. Arizona,* 384 U.S. 436 (1966), decision. Moreover, the lower court's reliance upon *Commonwealth v. Reginelli,* supra, is clearly unwarranted.

*Reginelli* relies upon *Walder v. United States,* 347 U.S. 62 (1954). In *Walder,* Justice FRANKFURTER was careful to cite and distinguish *Agnello v. United States,* 269 U.S. 20 (1925), from the *Walder* situation. In *Agnello,* the defendant did not admit in direct testimony anything about his connection with narcotics apart from what was found at the scene of the crime. He simply defended on the ground that he did not know that narcotics were being sold. On cross-examination, the prosecution asked the defendant if he had ever had any other connection with narcotics. Agnello answered that he never had anything to do with narcotics.

The government, by way of rebuttal, introduced illegally obtained evidence to impeach defendant's statement made on cross-examination. This tactic was condemned by the United States Supreme Court and a new trial was awarded. Mr. Justice FRANKFURTER reaffirmed the rule in *Walder* that tainted evidence cannot be "smuggled in" in order to impeach a defendant's testimony elicited on cross-examination.

*Reginelli* also relies upon the case of *Commonwealth v. Wright,* 415 Pa. 55, 202 A. 2d 79 (1964). In *Wright,* the court set forth specific conditions under which inadmissible evidence may be used for impeachment purposes. The Court further stated that: ". . . the exception concerns itself *only* with perjurious testimony made by the defendant in his *examination in chief*; . . ." at 60. [Emphasis added.]

In *Reginelli* and *Wright,* as in *Walder,* the statement had been made on direct examination, while the testimony impeached here was given on cross-examina-

tion. Since *Reginelli* and *Wright* rely upon *Walder* for admission of suppressed evidence to impeach the direct testimony of a defendant, the qualifications of the rule enunciated by Mr. Justice FRANKFURTER noted above must be accorded integrity and applied here. Moreover, the similarity between this case and *Agnello* is striking and, in my opinion, needs no further amplification.

A second and equally important ground for granting a new trial in the instant case is that the trial court committed a fundamental and reversible error in failing to instruct the jury that the evidence used to impeach defendant's testimony should only be considered on the issue of credibility. The Supreme Court of Pennsylvania cautioned in *Commonwealth v. Wright,* supra, at 60-61 that, ". . . where such evidence is properly admitted, the trial court must carefully instruct the jury that it is not to be used to determine if the defendant committed the crime, but solely for the purpose of evaluating the defendant's credibility." As in the case of admission of defendant's prior convictions, it is essential that the limited purpose of impeachment testimony be explained to the jury, even in the absence of a request by counsel. *Commonwealth v. Wright,* supra at 61.

The charge to the jury in the instant case was severely inadequate to satisfy the above test. The court stated: "Now, then you had rebuttal. In rebuttal, Detective Edward Hueston testified that when the defendant was in conversation with him on August 12, 1965, he had admitted that he knew Rudy Tilghman, and then you heard the discussion about the streets. . ." Later, the Court stated that: "Now, if there is a denial as to whether or not the defendant knew that it was Rudy Tilghman or not, this is one of the questions you have to determine." The clear import of this charge is that the jury should use the rebuttal testi-

mony substantively rather than for the purpose of impeachment alone. This failure in the charge is accentuated because the court did caution the jury that it could only use defendant's prior conviction for purposes of credibility. Since the entire defense was basically centered around defendant's contention that he knew nothing about any planned robbery, the failure to give limiting instructions severely damaged defendant's case by allowing the jury to weigh the statements substantively in reaching its verdict.

For the above reasons, therefore, I would reverse the judgment and order a new trial.