## Commonwealth v. Willman

Before Evans, Barber and McClelland., JJ.

*William Pfadt*, for Commonwealth.

*Vedder White*, for defendant.

McClelland, J., May 2, 1968.—Defendant, John Willman, was arrested on July 13, 1963, on the charge of assault with the intent to ravish one Mrs. Boyer. Defendant was questioned from July 13, 1963, to July 18, 1963, at the Erie City Jail concerning the murder of Laura Mutch, during which confinement defendant made numerous verbal admissions and one written confession. On July 18, 1963, defendant was taken to the Erie County Jail. On August 31, 1963, defendant was interrogated by Erie police officers and another confession was taken from defendant. On September 6, 1963, defendant was indicted by the September grand jury for the charge of assault with the intent to ravish Mrs. Boyer. On September 26, 1963, defendant was charged with the murder of Laura Mutch. On September 26, 1963, counsel was appointed for defendant. On January 9, 1964, a hearing was held by the Erie County court on defendant's motion to suppress all oral and written statements given by defend-

ant. On January 27, 1964, in an opinion by Judge Laub, the court denied defendant's motion to suppress the oral and written admissions made by defendant. Defendant was then convicted by a jury trial commencing on February 9, 1964, of first degree murder. Defendant was sentenced to life imprisonment. A motion for a new trial was filed but later withdrawn. Defendant filed for post conviction relief, which was denied in an opinion rendered by Judge Lindley McClelland, but the opinion of said judge ordered that defendant file a motion for a new trial and/or an arrest of judgment. Said motions were filed attacking defendant's admissions and confessions.

In his opinion of January 27, 1964, Judge Burton R. Laub carefully disposed of most of the objections to defendant's confessions in these words:

"Within twenty minutes after he was arrested on a charge of Assault with Intent to Ravish Davida Logan Boyer, the defendant orally confessed to the police that he had killed Mrs. Mutch. Within the next twenty-four hours he gave his first written confession after having been fully advised of his constitutional rights. From time to time following his oral confession and up to and including the time of the second written confession on August 31, 1963, Willman was questioned by the police as to the details of the murder in order to satisfy themselves that he was, in fact, the slayer of Mrs. Mutch. There was never, at any time, any prolonged interrogation, the defendant was not deprived of rest or sleep, nor was he questioned in relays or by a large number of officers at a time. There is not the slightest evidence that at any time he was threatened, coerced, assaulted or otherwise mistreated, but on the contrary, the evidence discloses that he was fed, given exercise, permitted a normal amount of sleep and, on at least one occasion, given aspirin for relief when he complained of headache. The questioning at this junc-

ture ceased immediately. His family was given immediate notice of his incarceration on the assault charge and, shortly afterwards, his brother and his brother's wife were apprised by the police that the defendant was being questioned with respect to the Mutch murder".

Frankly, only the written confession of August 31, 1963, given 49 days after the initial arrest and without benefit of counsel, gives this court concern.

## LAW

The confession revolution initiated by the Supreme Court of the United States is most interesting. (See McCormick on Evidence, chapter 12, for a fascinating review of the confession problem up to 1954.)

As Judge Lindley R. McClelland wrote in "Along Came Miranda":

"Note the revolution relative to federal control of confessions in state criminal cases.

"Obviously, the mistreatment of the Negro in the South a few decades ago forced the Federal Courts to rectify local injustice. Rightly so.

"Who could quarrel with Brown v. Mississippi? Hanging, whipping and other forms of torture were used to extract confessions. Convictions based on such confessions could not be allowed to stand.

"Physical force eventually was replaced by the more subtle coercion of 'prolonged interrogation' and 'inherently coercive' treatment. The Supreme Court of the United States in Haynes v. Washington held the validity of confessions must be decided by the 'totality of the circumstances.' " ["Along Came Miranda", Pennsylvania Bar Association Quarterly, March, 1968, page 421.]

Chief Justice Bell, in Commonwealth v. Gockley, 411 Pa. 437 (1963), stated the Pennsylvania rule to be:

"In order to determine whether a statement or confession was voluntary or coerced, all the circumstances and conditions existing at and prior to its making are admissible. The totality of the circumstances under which they are given must be considered: Commonwealth v. Bryant, 367 Pa. 135, 143, 79 A.2d 193; Wigmore on Evidence Vol. III (3rd Ed.) §822; Commonwealth v. Graham, 408 Pa. 155, 162, 182 A.2d 727; Commonwealth v. Ballem, 386 Pa. 20, 27, 123 A.2d 728; Commonwealth v. Johnson, 372 Pa. 266, 272-274, 93 A.2d 691; Commonwealth v. Bolish, 381 Pa. 500, 524, 113 A.2d 464".

Justice Stewart, in Reck v. Pate, 367 U. S. 433 (1961), revealed the attitude of the Supreme Court of the United States relative to the totality of the circumstances in these famous words:

"The question whether a confession was extracted by coercion does not depend simply upon whether the police resorted to the crude tactic of deliberate physical abuse '[T]he blood of the accused is not the only hallmark of an unconstitutional inquisition.' Blackburn v. Alabama. 361 U. S. 199, 206. The question in each case is whether a defendant's will was overborne at the time he confessed. Chambers v. State of Florida, 309 U. S. 227; Watts v. Indiana, 338 U. S. 49, 52, 53; Leyra v. Denno, 347 U. S. 556, 558. If so, the confession cannot be deemed 'the product of a rational intellect and a free will,' Blackburn, supra, at 208. In resolving the issue all the circumstances attendant upon the confession must be taken into account. See Fikes v. Alabama, 352 U. S. 191, 198; Payne v. Arkansas, 356 U. S. 560, 567. Physical mistreatment is but one such circumstance, albeit a circumstance which by itself weighs heavily. But other circumstances may combine to produce an effect just as impellingly coercive as the deliberate use of the third degree.

"During the entire period preceding his confessions

Reck was without adequate food, without counsel, and without the assistance of family or friends. He was, for all practical purposes, held incommunicado. He was physically weakened and in intense pain. We conclude that this total combination of circumstances 'is so inherently coercive that its very existence is irreconcilable with the possession of mental freedom by a lone suspect against whom its full coercive force is brought to bear.' Ashcraft v. Tennessee, 322, U. S. 143, 154.

"It is true that this case lacks the physical brutality present in Brown v. Mississippi, 297 U. S. 278, the threat of mob violence apparent in Payne v. Arkansas, 356 U. S. 560, the thirty-six hours of consecutive questioning found in Ashcraft v. Tennessee, 322 U. S. 143, the threats against defendant's family used in Harris v. South Carolina, 338 U. S. 68, or the deception employed in Spano v. New York, 360 U. S. 315, and Leyra v. Denno, 347 U. S. 556. Nor was Reck's mentality apparently so irrational as that of the petitioner in Blackburn v. Alabama, 361 U. S. 199. However, it is equally true that Reck's youth, his subnormal intelligence, and his lack of previous experience with the police make it impossible to equate his powers of resistance to overbearing police tactics with those of the defendants in Stein v. New York, 346 U. S. 156, or Lisenba v. California, 314 U. S. 219".

In 1963 in Haynes v. Washington, 373 U. S. 503, (1963), Justice Goldberg refined the totality doctrine by noting:

"The jury was instructed, in effect, not to consider as relevant on the issue of voluntariness of the confession the fact that a defendant is not reminded that he is under arrest, that he is not cautioned that he may remain silent, that he is not warned that his answers may be used against him, or that he is not advised that he is entitled to counsel. Whatever in-

dependent consequence these factors may otherwise have, they are unquestionably attendant circumstances which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession".

The Supreme Court of the United States had considered the issue of the denial of counsel as a major factor in rendering a confession involuntary. Justice Clark in Crooker v. California, 357 U. S. 433 (1958), approached the problem directly. Said Justice Clark:

"Petitioner's claim of coercion, then, depends almost entirely on denial of his request to contact counsel. This Court has not previously had occasion to determine the character of a confession obtained after such a denial. But we have held that confessions made by indigent defendants prior to state appointment of counsel are not thereby rendered involuntary, even in prosecutions where conviction without counsel would violate due process under the Fourteenth Amendment. Brown v. Allen, (1953), 344 U. S. 443, 474-476; Stroble v. California (1952), 343 U. S. 181, 196-198; Gallegos v. Nebraska, (1951), 342 U. S. 55, 64-68. To be sure, coercion seems more likely to result from state denial of a specific request for opportunity to engage counsel than it does from state failure to appoint counsel immediately upon arrest. That greater possibility, however, is not decisive. It is negated here by petitioner's age, intelligence, and education. While in law school he had studied criminal law; indeed, when asked to take the lie detector test, he informed the operator that the results of such a test would not be admissible at trial absent a stipulation by the parties. Supplementing that background is the police statement to petitioner well before his confession that he did not have to answer questions. Moreover, the manner of his refusals to answer indicates full awareness of the right to be silent. On this record we are unable to say that

petitioner's confession was anything other than voluntary".

Justice Harlan in the companion case of Cicenia v. LaGay, 357 U. S. 504, (1958), asserted:

"This Court, in judging whether state prosecutions meet the requirements of due process, has sought to achieve a proper accommodation by considering a defendant's lack of counsel one pertinent element in determining from all the circumstances whether a conviction was attended by fundamental unfairness. See House v. Mayo, 324 U. S. 42, 45-46; Payne v. Arkansas, 356 U. S. 560, 567.

"In contrast, petitioner would have us hold that any state denial of a defendant's request to confer with counsel during police questioning violates due process, irrespective of the particular circumstances involved. Such a holding, in its ultimate reach, would mean that state police could not interrogate a suspect before giving him an opportunity to secure counsel. Even in federal prosecutions this Court has refrained from laying down any such inflexible rule. See NcNabb v. United States, supra; Mallory v. United States, 354 U. S. 449. Still less should we impose this standard on each of the 48 States as a matter of constitutional compulsion. It is well known that law-enforcement problems vary widely from State to State, as well as among different communities within the same State. This Court has often recognized that it is of the 'very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice.' Hoag v. New Jersey, 356 U. S. 464, 468. See Maxwell v. Dow, 176 U. S. 581; Twining v. New Jersey, 211 U. S. 78. The broad rule sought here and in Crooker would require us to apply the Fourteenth Amendment in a manner which would be foreign both to the spirit in which it was conceived

and the way in which it has been implemented by this Court".

Lower Federal courts were in accord with these views as late as 1966, See Pece v. Cox, 354 F2d 913 (1965) ; Holman v. Washington, 364 F2d 618 (1966), but on June 13, 1966, the Crooker and Cicenia cases were overruled. See Miranda v. Arizona, 384 U. S. 436 (1966).

In essence, the foregoing is a fair summary of the confession dilemma up to the time of the murder trial of John H. Willman in February 1964.

To understand the later law relative to confessions and the impact of that law on prior cases involving the totality conception, we note the concise review in "Along Came Miranda":

"On May 18, 1964, Massiah was decided. Massiah was charged with violation of the narcotics law. He retained a lawyer, plead not guilty and was released on bail. A federal agent listened to Massiah's incriminating statements to a confederate and used the evidence in Court. These statements, made in the absence of his attorney, were held inadmissible.

"Ronald P. Sokol, in his study of Massiah, finds 'the real disagreement between the majority and dissenting Justices is over the scope and meaning of the Fifth Amendment privilege against self-incrimination. The majority sees that provision as granting a person an absolute right to silence; the dissenters see it as furnishing protection only against compulsion to speak".

"On June 22, 1964, along came Escobedo. The actual holding of the case has been stated many times. Said Justice Goldberg: 'We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating

statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the assistance of counsel' in violation of the Sixth Amendment to the Constitution as made obligatory upon the States by the Fourteenth Amendment, (Gideon v. Wainwright, 372 U. S. at 342) and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.'

"Professor Herman believes Escobedo 'may prove to be the most significant decision ever made in the area of criminal procedure.'

"Actually, Escobedo posed more problems than it answered. State courts interpreted the decision in diverse ways. The Supreme Court of the United States remained silent for nearly two years.

"Then, on June 13, 1966, along came Miranda. The holding, as briefly stated by Chief Justice Warren was: 'The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attor-

ney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned' ".

In two cases, holding Escobedo and Miranda should not be applied retroactively, the Supreme Court of the United States again refined the totality doctrine. In Johnson v. New Jersey, 384 U. S. 719, (1966), the court held:

"At the same time, our case law on coerced confessions is available for persons whose trials have already been completed, providing of course that the procedural prerequisites for direct or collateral attack are met. See Fay v. Noia, 372 U. S. 391, (1963). Prisoners may invoke a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years. See Reck v. Pate, 367 U. S. 433, (1961). That test now takes specific account of the failure to advise the accused of his privilege against selfincrimination or to allow him access to outside assistance. See Haynes v. State of Washington, 373 U. S. 503, (1963); Spano v. New York, 360 U. S. 315, (1959). Prisoners are also entitled to present evidence anew on this aspect of the voluntariness of their confessions if a full and fair hearing has not already been afforded them. See Townsend v. Sain, 372 U. S. 293, (1963). Thus while Esco-

bedo and Miranda provide important new safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim".

The same day, in Davis v. North Carolina, 384 U. S. 737, (1966), the court, for all practical purposes, made the failure to give the Miranda warnings a significant factor to consider in prior cases. The court's words were:

"The review of voluntariness in cases in which the trial was held prior to our decisions in Escobedo and Miranda is not limited in any manner by these decisions. On the contrary, that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation, as is now required by Miranda, is a significant factor in considering the voluntariness of statements later made. This factor has been recognized in several of our prior decisions dealing with standards of voluntariness. Haynes v. Washington, 373 U. S. 503, 510-511, (1963); Culombe v. Connecticut, 367 U. S. 568, 610, (1961); Turner v. Pennsylvania, 338 U. S. 62, 64, (1949). See also Gallegos v. Colorado, 370 U. S. 49, 54, 55, (1962). Thus the fact that Davis was never effectively advised of his rights gives added weight to the other circumstances described below which made his confessions involuntary".

The voluntariness test, measured by a totality of circumstances, is an "evolving standard", it is flexible, and takes into account the concerns pointed out by Miranda. See "The Applicability of Miranda to Retrials", 116 U. of Pa. Law Rev. 316, Dec. 1967.

In short, the 1968 standards of the totality of the circumstances govern John H. Willman's 1963 confessions.

456

Justice Roberts, of the Supreme Court of Pennsylvania, outlined a similar problem in these words in Commonwealth v. Baity, 428 Pa. 306, 311:

". . . are we to be governed by 1949 law or 1967 law in passing upon the voluntariness of Baity's confession? We start, of course, with the proposition now firmly established both by this Court, and the Supreme Court of the United States, that an *involuntary* confession, unlike a confession procured in the absence of *Miranda* or *Escobedo* warnings, could have such an impact on the reliability of the fact finding process, due to the substantial possibility that it represents an untruth, that we give retroactive application to all the current United States Supreme Court cases dealing with involuntary confessions. See, e.g., Davis v. North Carolina, 384 U. S. 737, 86 S. Ct. 1761 (1966); cf. Commonwealth v. Padgett, 428 Pa. 229, 237 A. 2d 209, (1967). See also, Mishkin, 'Forward: The High Court, The Great Writ, and the Due Process of Time and Law', 79 Harvard Law Review 56, 79-86 (1965). Thus, were we faced with an involuntariness claim stemming from a 1949 jury trial in which the confession were used as evidence, there would be no doubt that 1967 law would dictate the parameters within which the confession must now be tested".

Herein, we approach "the anxious task of reconciling the responsibility of the police for ferreting out crime with the right of the criminal defendant, however guilty, to be tried according to constitutional requirements": Justice Frankfurter in Culombe v. Connecticut, 367 U. S. 568 (1961).

We agree with Wigmore, our greatest authority on evidence, that "in many cases where confessions have been excluded, justice and common sense have been sacrificed, not at the shrine of mercy, but at the shrine of guilt": Vol. 3, Wigmore on Evidence, §865, p. 352.

Nevertheless, whether we agree fully with some

decisions of the Supreme Court of the United States or not, the decisions bind us and we will follow where they lead.

Tested by 1968 standards for totality and voluntariness, our decision seems inevitable.

The oral confessions and the written confession given a few hours or days after John H. Willman was arrested on July 13, 1963, are voluntary and admissible.

If our arithmetic is correct, from July 13, 1963, to August 31, 1963, is 49 days. On July 14, 1963, John H. Willman was charged with the crime of assault with intent to ravish. John H. Willman was a mental defective with an I.Q. between 63 and 70. Except for the explanation that his statement could be used against him in court, there is no evidence that he was warned of other legal rights. No attorney was appointed for him until after he again confessed to the killing of Laura Mutch on August 31, 1963. Legally speaking, the 1968 standards of totality-voluntariness command us to hold the written confession of August 31, 1963, to be involuntary and invalid.

Excellent lawyers and judges have disagreed with our decision. On August 31, 1963, Richard Scarpitti, Esq., was district attorney. He ordered the police to obtain the statement.

President Judge Edward H. Carney was district attorney and Richard Brabender, Esq., was chief assistant district atorney at the time of John H. Willman's trial in February 1964. Judge Elmer L. Evans (a member of this court en banc) was the trial judge.

Dean Burton R. Laub, then judge, held all the confessions valid and voluntary.

These eminent gentlemen were correct in 1963 and 1964. They could do no other. We are bound, however, by more stringent standards and we must apply them retroactively.

The confession of August 31, 1963, is merely repetitious of the one which was taken in July 1963. If possible, the court might hold the August confession to be in error, but "harmless error". Such is impossible.

Automatic reversal is the order of the day. Justice Black, of the Supreme Court of the United States, bluntly asserts:

"When involuntary confessions have been introduced at trial, the Court has always reversed convictions regardless of other evidence of guilt. As we stated in Lynumn v. Illinois, 372 U. S. 528, 537, the argument that the error in admitting such a confession 'was a harmless one . . . is an impermissible doctrine.' That conclusion has been accorded consistent recognition by this Court. Malinski v. New York, 324 U. S. 401, 404; Payne v. Arkansas, 356 U. S. 560, 568; Spano v. New York, 360 U. S. 315, 324; Haynes v. Washington, 373 U. S. 503, 518-519; Jackson v. Denno, 378 U. S. 368, 376-377. Even when the confession is completely 'unnecessary' to the conviction, the defendant is entitled to 'a new trial free of constitutional infirmity.' Haynes v. State of Washington, supra, 373 U. S., at 518-519": Chapman v. California, 386 U. S. 18 (1967).

"Changes governing the voluntariness of confessions are retroactive and admission of a coerced confession requires automatic reversal": Commonwealth v. Padgett, 428 Pa. 229, 235 (1968).

"And, a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon a constitutionally tainted admission or confession without regard for the truth or falsity thereof, even though there is ample evidence aside from the admission or confession to support the conviction. See Miranda v. Arizona, 384 U. S. 436, (1966) ; Jackson v. Denno, Warden, 378 U. S. 368, 376, 428 (1964) ; Rogers v. Richmond, 365 U. S. 534, 540-541 (1961) ; and, Payne v. Arkansas, 356 U. S. 560, 567-568

(1958)": Commonwealth v. Vivian, 426 Pa. 192, 195-96 (1967).

"This doctrine, commonly known as the 'automatic reversal' rule, was initially formulated by the United States Supreme Court in Bram v. United States, 168 U. S. 532, at 541 (1897). For an informative, compact treatment of the historical development and apparent underpinnings of the rule, see Recent Developments, 65 Mich. L. Rev. 563 (1967). The above article states that any of three separate rationales may constitute the logical basis for the rule. Thus, the use of an inadmissible confession requires automatic reversal regardless of the existence of ample admissible evidence because: (1) It is impossible to accurately measure what impact the confession had on the jury. Payne v. Arkansas, 356 U. S. 560, 567-568 (1958); or (2) The defendant has been deprived of a constitutional right. Miranda v. Arizona, 384 U. S. 436, (1966); or, (3) Law enforcement officials who use constitutionally tainted evidence to secure convictions are to be 'punished' and thereby discouraged from future repetitions by having such convictions automatically reversed. 65 Mich. L. Rev. 563, 569 n. 39 (1967)": Commonwealth v. Vivian, 426 Pa. 192, 196 (1967).

Bound, as we are, by such decisions of the Supreme Court of Pennsylvania and the Supreme Court of the United States, we feel compelled to make the following:

## ORDER OF COURT

Tested by 1968 standards of voluntariness, the written confession of John H. Willman, taken in the Erie County Jail, Erie, Pa., on August 31, 1963, 49 days after his arrest, without benefit of counsel, without adequate warnings of his constitutional rights, with full knowledge that John H. Willman was a mental defective, is an invalid and involuntary confession and under the rule of automatic reversal, John H. Will-

man is hereby granted a new trial under his indictment for murder.