**Collers License**

*Frances S. Palmer,* Assistant District Attorney, for Commonwealth.

*Michael Wherry,* for defendant.

ACKER, J., February 10, 1972.—This case arises from a charge of operating a motor vehicle during suspension of operating privileges. By consent, it was tried nonjury. In that problems of constitutional dimension have arisen, the following opinion and order is prepared. Testimony was taken on December 16, 1971, from which this court makes the following findings of fact:

## FINDINGS OF FACT

1. On October 16, 1969, as a result of two speeding violations, defendant's operating privileges were suspended for 60 days, subject to defendant reporting on November 6, 1969, at 7:30 p.m. for the commencement of an eight-hour course consisting of two-hour classes at the Mercer High School, Mercer, Pa.

2. The petitioner was working afternoon turn at this time and was unable to attend the driving training course.

3. On February 3, 1970, defendant was informed by a "Withdrawal of Motor Vehicle Privileges" that under 75 PS §619.1(b) he was receiving a mandatory 60-day suspension for driving 90 mph in a 55 mph speed zone. In addition, due to his failure to attend or satisfactorily complete the requirement of driver improvement school, five additional points were assigned to his record as required by section 619.1(f), making the total point accumulation 11 points. In that he now had 11 points, a 60-day suspension was imposed pursuant to 75 PS §619.1(f), (i) and (k). He was directed to return any current operator's license in his possession, the effective date being February 18, 1970. The two 60-day suspensions were to run

consecutively, thereby making a 120-day suspension total.

4. Petitioner failed to surrender his license and the Pennsylvania State Police came to his premises and secured the license.

5. On or about August 4 or 5, 1970, petitioner received a notice dated August 1, 1970, requiring him to take a further examination for driving privileges within 30 days. Petitioner's operating privileges had previously been restored to him from the previous offense above mentioned.

6. Petitioner was in the process of becoming married and moving into an apartment and lost the authorization to take the further driving examination. Petitioner appeared at the Pennsylvania State Police barracks in Mercer for the purpose of taking the examination at some time between the date of his marriage of September 19, 1970, and October 24, 1970, but was informed that he could not take the examination without the written authorization of the department to do so.

7. Petitioner was given an address in Harrisburg by the Pennsylvania State Police to write to to acquire a copy of the written authorization or new authorization.

8. On October 24, 1970, petitioner wrote to the address given him by the Pennsylvania State Police, requesting authorization to take the examination, but failed to furnish the number of his Pennsylvania operator's license, which therefore prevented a check of the records of that department.

9. By responding letter of November 4, 1970, the Bureau of Motor Vehicles, through Nevin I. Brenner, director, informed petitioner of another address in Harrisburg to write to, reminding him that he had

failed to provide his operator's license number, thereby preventing a check of their records.

10. On November 9, 1970, the Bureau of Traffic Safety from Harrisburg informed petitioner that he had failed to attend or satisfactorily complete the requirements of a special examination and that, therefore, five additional points were assessed to his driving record, making a total point accumulation of 13 points. In that an accumulation of at least 11 points calls for a suspension, 90 days were imposed as mandated by section 619.1(g), (i) and (k) and petitioner was directed to return any current operator's license in his possession for a period of 90 days. The effective date of the suspension was November 19, 1970.

11. At some time unknown to petitioner, a second letter was written to the address provided by the letter of November 4, 1970, by petitioner requesting permission to take the examination.

12. Petitioner, in addition, contacted an attorney, Timothy McNickle, in Grove City, who wrote to the department requesting a letter permitting petitioner to take the examination, but no response was received either to the second letter of petitioner or by the attorney.

13. Petitioner did not surrender his license as required by the notice and did continue to operate his motor vehicle at least one occasion.

14. On May 22, 1971, at about 8:44 a.m., petitioner was stopped by Clair T. Uber, of the Grove City Police Department, traveling south on Pennsylvania Route #173, also known as Liberty Street, in the Borough of Grove City, and was requested to produce his operator's license. Petitioner stated that he did not have it with him but was told to bring it to the officer within

the next several days, which petitioner failed to do, even though he had a license during this period.

15. The officer went to the Bureau of Traffic Safety and secured notification that the operating privileges of petitioner had been suspended and, therefore, on July 22, 1971, filed the present charges against him.

16. On August 18, 1971, Trooper Herbert A. Warfle, of the Pennsylvania State Police, was notified by his superiors to go to the premises of petitioner and pick up his operator's license. On that date, the officer found petitioner at a gas station next door to his residence, at which time petitioner stated that he was expecting him and surrendered the license to the State Trooper.

17. Petitioner paid a fine for the two speeding violations which caused the initial suspension of 60 days, but was not given any notice of a right to a hearing prior to the first suspension or prior to his present suspension, which gives rise to the present charge.

Although the certification of the notice for procedure used by the department as to the suspension of operating privileges for failure to take the required examination did not state that the notice was sent, it did state that it was issued to petitioner. "Issue" is defined by the American Heritage Dictionary of the English Language of 1969 as, "An act or instance of flowing, passing or giving out." When combined with the testimony that petitioner informed the officer of why he was there, the court reasonably concluded that petitioner did, in fact, receive the notice. A demurrer was presented to the court at the conclusion of the Commonwealth's case, which was denied. Petitioner was directed to come forward with his evidence if he desired and thereupon took the stand and admitted receipt of not one but two notices, which were identical, of the necessity of surrendering

his license. Pursuant to the rule that in deciding whether a demurrer is properly overruled, all of the evidence both of the Commonwealth and defense must be considered,[1] the court concludes that the receipt of notice was adequately established.

The only defense to failure to surrender the operator's license was that the petitioner from previous experience knew that if he did not surrender it the police would eventually come for it and that he thought this was the procedure to be followed when a license was suspended. This, however, ignores the applicable Pennsylvania law[2] as well as the notice itself which states, "You are required to return any current operator's license in your possession. . . ."

Defendant, however, was not charged with failure to surrender his license but rather driving during suspension.

Two final issues remain. The first is whether defendant had a constitutional right prior to his suspension to a hearing. Further, if there was such a right, whether he is to be found not guilty under the facts here present.

The act provides[3] that the secretary is required to give a hearing when it is indicated that the driver is at fault or partly at fault in causing an accident requiring such person to undergo a special examination or attending improved driver school or clinic. There is no statutory requirement of a hearing when the suspension is either for accumulation of points through speeding or accumulation of points for

---

[1] Commonwealth v. Kohme, 204 Pa. Superior Ct. 78, 203 A. 2d 401 (1964).

[2] Act of January 24, 1966, P. L. 1497, sec. 2, 75 PS §619.1(l).

[3] Act of January 24, 1966, P. L. 1497, sec. 2, 75 PS §619.1(n).

failure to attend a school or take an examination or a combination of the two.

Consideration must be given to the latest declaration of the United States Supreme Court upon due process in license suspension hearings: Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed. 2d 90 (1971),[4] concerns a financial responsibility statute similar to that of Pennsylvania. It declared that before the State may deprive a driver of his license and vehicle registration, it must provide a forum for the determination of whether there is, in fact, a reasonable possibility of a judgment being rendered against him as a result of an accident. The alternate methods of compliance were left to the States. However, the court set forth the constitutional rights of an owner of an operator's license. It noted that a State could bar the issuance of all licenses to all persons who do not carry liability insurance or do not post security and not be violative of the Fourteenth Amendment. This, however, does not permit a State to set forth a statutory scheme for the taking of licenses without a proper hearing. Page 1589:

"In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. . . . This is but an application of the general proposition that relevant consti-

---

[4] The Bell case, supra, has been used by the United States Supreme Court in three subsequent cases where it vacated and remanded the action of the lower Federal court in each instance on uninsured motorist statutes: Gayton et al. v. Cassidy, 403 U. S., 11411 91 S.Ct. 2202 (1971), vacating the United States District Court of Texas in 317 F. Supp. 46; Chappell v. Burson, 91 S.Ct. 2210 (1971), lower court decision not reported; Pollion v. Lewis, 403 U.S. 902, 91 S.Ct. 2212 (1971), United States District Court of Illinois (320 F. Supp. 1343). It has likewise been used to reverse a lower Federal court dealing with the Florida Financial Responsibility Act in Salkay v. Williams, 445 F. 2d 599 (1971).

tutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'"

As to the type of procedural due process required, the court holds that an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee would suffice. The court refuses to accept the proposition that the licensee's rights are outweighed by countervailing governmental interests. The test of a due process hearing is whether it is "meaningful" and "appropriate to the nature of the case." Therefore, the court concludes that it is fundamental, except in emergency situations (this not being one) that due process requires that when a State seeks to terminate an interest such as here involved, it must grant notice and an opportunity for hearing appropriate to the nature of the case before it.

The Federal District Court for the Western District of Pennsylvania in Reese v. Kassab, Secretary of the Department of Transportation et al., Civil Action No. 71-551,[5] in an opinion and order of October 26, 1971, used the Bell case, supra, as authority to hold that before an operator's license can be suspended by the secretary under the terms of the Pennsylvania point system, there must be notice and opportunity for hearing before the action becomes effective. In considering this opinion several matters are of note. First, that the Reese case, supra, did not involve an injunction to the Secretary of the Department of Transportation and the Director of the Bureau of Traffic Safety in any case other than the one presently before it. Two, that it involved a direct attack

---

[5] 334 F. Supp. 744 (1971).

upon the suspension of plaintiff's operating privileges and not a collateral attack as is attempted in this case.[6] Third, that plaintiff contended the point assessment was improperly calculated because the justice of the peace reported a conviction in variance of that for which the fine and costs were paid.

Plaintiff, Reese, in the Federal action had previously commenced an action in the Court of Common Pleas of Allegheny County, to which the Commonwealth moved to quash the appeal. On a motion for rehearing, the previous rule was affirmed by the Superior Court relying upon Virnelson Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 359, 243 A. 2d 464 (1968). The Federal District Court, through Weiss, J., noted that the Commonwealth concluded that the "Point System" Act makes no provision for departmental administrative hearings at any time before suspension. However, by section 618(h) of The Vehicle Code, it notes that, after notice of suspension, any person may request a departmental hearing, but that it is not the practice to notify the licensee of the availability of this opportunity. Similarly, judicial review under section 620 of the act is provided only after suspension. The court concluded that this falls far short of what the Constitution requires, citing Bell, supra. The contention of the Commonwealth that, because the action of suspension is not discretionary under the act, an administrative hearing is not required was likewise rejected. The court commented that, even if the conviction upon which the point system is based cannot be contested, there remains the possibility, inter alia, that the

---

[6] In Commonwealth v. Boggs, 32 Beav. 1 (1971), through Salmon, J., it is concluded that a collateral attack is permissible in a driving a motor vehicle after suspension case.

convictions were of another person, the fines and costs were paid on information at variance with that from which the minor judiciary entered a conviction as plaintiff contended in that case, the points were improperly calculated, credits were wrongfully withheld or that there were errors on the report of conviction form. In none of those instances was there any provision for a hearing prior to suspension.

Virnelson, supra, upon which the Reese case, supra, was decided by the State court, presented the same legal problem as is here present. There, the court held that by the most recent amendment to section 618(b)(2), the secretary lost the discretionary power to suspend when one of the violations listed in section 619.1 had been committed by a licensed driver. A report of conviction from any magistrate or any court of record as required under section 1209 of The Vehicle Code, 75 PS §1209, requires that it be entered upon the record of the driver. When the accumulated points become 11 or more, the secretary must suspend the operator's license. However, by section 620 the licensee does have the right to appeal to the Court of Common Pleas, which is required to take testimony and examine into the facts. This hearing is to be de novo. However, the lower court's consideration has similarly been restricted by section 619.1 to determine merely whether there has been a compliance with that section. If the documents properly show that there has been a suspension, the Commonwealth has produced a prima facie case. Defendant, of course, has the right to show that he was not convicted or that the records or the computation of the secretary are incorrect. The merits of the suspension are no longer a matter for consideration by either the secretary or the court.

The Virnelson Motor Vehicle Operator License

Case, supra, has been followed in a series of cases, both in the Superior Court[7] and in the Commonwealth Court[8] and has not been reversed or modified by our State appellate courts.

It appears clear to this court that by the command of the United States Supreme Court in Bell, supra, due process does require that before a driver's license is suspended a notice for hearing appropriate to the nature of the case occur. In the case at bar there admittedly was no notice of a right to a hearing. However, the question remains whether under the facts of this case defendant is found guilty because of the failure to give such notice prior to suspension.

Merely because a defendant has a constitutional right to a hearing does not mean he is entitled to be found not guilty because of the denial of that right. Error may be harmless.[9]

In the Reese case, supra, it was contended that the

---

[7] Romm Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 369, 243 A. 2d 471 (1968); Baumer Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 372, 243 A. 2d 472 (1968); Wall Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 376, 243 A. 2d 475 (1968); Korns Motor Vehicle Operator License Case, 216 Pa. Superior Ct. 7, 260 A. 2d 488 (1969), remanded for findings of fact consistent with Virnelson, supra; Preston Motor Vehicle Operator License Case, 216 Pa. Superior Ct. 415, 268 A. 2d 134 (1970); Nyman Motor Vehicle Operator License Case, 218 Pa. Superior Ct. 221, 275 A. 2d 836 (1971); Wilson Motor Vehicle Operator License Case, 218 Pa. Superior Ct. 309, 280 A. 2d 820 (1971); Sakala Motor Vehicle Operator License Case, 219 Pa. Superior Ct. 174, 280 A. 2d 596 (1971).

[8] Commonwealth v. Iorio, 2 Com. Ct. 502, 276 A. 2d 360 (1971); Commonwealth v. Hepler, 2 Com. Ct. 516, 279 A. 2d 93 (1971).

[9] Commonwealth v. Padgett 428 Pa. 229, 237 A. 2d 209 (1968); wherein the rule of Chapman v. California, 386 U.S. 18, that a court must be convinced that the error was harmless beyond a reasonable doubt was applied.

fine and costs as paid on the information were at variance with that for which the minor judiciary entered a conviction. In the case at bar there is no contention of any error as to any of the events or circumstances which gave rise to the accumulation of points and the eventual suspension. The only ground suggested was that the State Police refused to permit defendant to take his examination after he lost the letter of instructions until he secured a new letter or found the old. His complaint was not the assessment of points.[10] Defendant was notified that he must turn in his license and it appeared was simply waiting for the police to come and get it, knowing full well the reason. This was several months after his arrest of May 22, 1971, and after the charges were filed on July 22, 1971. Knowing that he had no license, he continued to drive, being stopped for the violation giving rise to this incident many months after he was directed to surrender his license. When a defendant has no basis under which to complain of the denial of notice of a hearing and nothing could be accomplished by such hearing except to defeat a prosecution, such a hearing will not be required. We find beyond a reasonable doubt that whatever error there may have been in failing to give notice to defendant was harmless.

---

[10] In Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed. 2d 387 (1970), which held that defendants convicted of assault with intent to murder were entitled to an attorney at the preliminary hearing, it was directed that the case be returned to the State courts for a determination of whether the petitioners were prejudiced by the absence of counsel at the preliminary hearing. In the case at bar, where defendant did not allege any error in the assessment of his points, it appears clear that there has been no denial of a constitutional right by not having a departmental hearing, for nothing would be accomplished.

Wherefore, it is the finding of this court that defendant is guilty of the charge of operating a motor vehicle during suspension of his operator's license.

## ORDER

And now, this February 10, 1972, it is the verdict of this court that defendant, Nathan Allen Collers, is guilty of operating a motor vehicle without an operator's license.