**UNITED STATES of America ex rel. Alfred BURKETT**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pa.**

**Civ. A. No. 71-111.**

United States District Court,
E. D. Pennsylvania.

July 2, 1971.

fifteen-year sentence following his conviction in the Court of Quarter Sessions of Philadelphia County for assault with intent to maim, aggravated robbery, rape, assault and battery with intent to ravish, and conspiracy. He has filed a petition for writ of habeas corpus alleging that: (1) his identification by the complaining witness was so uncertain as to have denied him due process of law; (2) the absence of counsel at a line-up tainted the in-court identifications of two witnesses and rendered their admission into evidence a denial of relator's right to due process; and (3) a laboratory report favorable to relator was suppressed by the prosecution.

Relator was tried and found guilty before Judge Gregory C. Legakos, sitting without a jury, on October 31, 1966. Relator appealed his conviction to the Pennsylvania Superior Court, which awarded relator a new trial on grounds not material to the present proceeding.[1] Relator was re-tried and again found guilty on all counts before Judge Alexander F. Barbieri[2] and a jury on March 21, 1968. The Commonwealth's evidence was to the effect that Mrs. Dorothy Toomer, the complaining witness, after having driven a friend home, made a wrong turn into a one-way street near 24th and Jefferson Streets in Philadelphia. Relator then entered her car, backed it out of the one-way street, and drove to 15th and Stillman Streets, where he and some other men forced Mrs. Toomer to have sexual intercourse with them, enforcing their demands by slapping her in the face and other acts of violence. The defense undertook a laborious effort to show that Mrs. Toomer was mistaken in her identity of relator,

Alfred Burkett, pro se.

Arlen Specter, Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

Relator, a state prisoner, is currently serving a seven and one-half to

---

1. In Commonwealth v. Burkett, 211 Pa. Super. 299, 235 A.2d 161 (1967), the court held that where relator took the stand to describe the circumstances surrounding his meeting the prosecutrix, it was error for the Commonwealth to impeach relator's testimony by introducing statements of the relator elicited by the police without *Miranda* warnings. It should be noted that the United States Supreme Court has recently held that a statement inadmissible against a defend-

ant in the prosecution's case in chief because of failure to give *Miranda* warnings, may be used for impeachment purposes to attack the credibility of defendant's trial testimony. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Thus, had *Harris* been the law in 1967, Burkett would not have been entitled to a new trial.

2. Judge Barbieri is now a Justice of the Pennsylvania Supreme Court.

and was confused as to which individuals had raped her, but the jury believed the eye-witness identification by Mrs. Toomer.

On August 7, 1969, relator appealed to the Pennsylvania Superior Court, which affirmed the judgment without an opinion. Commonwealth v. Burkett, 215 Pa.Super. 733, 256 A.2d 138 (1969). On December 19, 1969, the Supreme Court of Pennsylvania denied relator's petition for allowance of appeal. Relator has therefore exhausted his state remedies, and his case is properly before us for an adjudication of his constitutional claims.[3] Moreover, since the only issues which we must now rule upon do not concern facts outside the notes of testimony, we conclude that it is unnecessary to hold an evidentiary hearing. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Relator's first claim in support of his petition is that the guilty verdict founded upon the inconsistent identification by the complaining witness was a denial of due process. We have examined the entire notes of testimony and conclude that the testimony of the complaining witness, Mrs. Dorothy Toomer, was not so inconsistent or unreliable as to preclude a jury from finding the relator guilty beyond a reasonable doubt. Although Mrs. Toomer appeared confused during certain points of the trial as to the number and identity of all the young men who raped and/or assaulted her, she steadfastly maintained that relator committed all of the acts for which he was charged. Furthermore, relator's conviction was based not only upon Mrs.

Toomer's testimony, but also upon other independent circumstantial evidence. At trial, Commonwealth witness James Grove testified that, on the night in question, he and several other boys were walking home from a party, and he saw Burkett drive away with Mrs. Toomer in Mrs. Toomer's car. The Commonwealth also called T. A. Jones, a Philadelphia fireman, who testified that he saw Mrs. Toomer and Burkett together on the night of the crimes and that he saw Burkett drive away in Mrs. Toomer's auto. Thus, Grove's and Jones' testimony, linking the relator and the complaining witness together on the night of the crime, along with the additional positive identification of Burkett by Mrs. Toomer, were sufficient to permit the jury to conclude beyond a reasonable doubt that Burkett committed the crimes.

Relator's second contention is that the in-court identifications made by Mrs. Toomer and Mr. Jones were so tainted as to render their admission into evidence a denial of due process. The testimony at trial shows that Mrs. Toomer and Mr. Jones both confronted relator at the police station on the night of the incident and made a positive identification of relator as the principal assailant. The record does not indicate exactly how the identification took place, but it would appear that relator was unrepresented by counsel at that time.

In support of his claim for relief, relator cites the cases of United States v. Wade, 338 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), where the Supreme Court held that: (1) an out-of-

---

3. In its answer, the Commonwealth asserts that relator failed to raise, and thus exhaust, the issues of absence of counsel at the line-up and suppression of a favorable laboratory report in his previous state proceedings. We have read relator's state petitions and conclude that the only issue relator has not previously raised is the suppression of the laboratory report. In his petition, relator alleges that this issue was never raised previously because he was ignorant of the existence of a laboratory report. If, in fact, this is the case, relator may raise this issue now in a state proceeding and will not be deemed to have knowingly waived any constitutional claim. However, relator's failure to raise this issue in his previous appeals necessitates that we defer any consideration of this issue until relator raises it in a state proceeding. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

court identification is a critical stage in the prosecution at which defendant is entitled to the aid of counsel; (2) an admission of in-court identifications without the prior determination that they were not tainted by an illegal line-up is constitutional error; and (3) testimony that the witnesses had identified defendant at the illegal line-up is per se inadmissible. On that same day, however, the Supreme Court decided the companion case of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), in which the Court held that *Wade* and *Gilbert* were not to be applied retroactively. Noting that the reliability of the fact-finding process is not deterred by out-of-court identifications, the Court held that a retroactive application of *Wade* and *Gilbert* was unnecessary for the fair administration of justice. The Supreme Court also concluded that no distinction was justified between convictions now final and convictions at various stages of trial and direct review; in both instances, the decisions were not to be given retroactive application.

 In the instant case, the identification at the police station (in 1965) and the first trial (in 1966) occurred prior to *Wade* and *Gilbert*. The second trial (to which relator would not have been entitled had *Harris* then been the law—see note 1, *supra*) took place in 1968, subsequent to the decisions in *Wade* and *Gilbert*. However, we read *Stovall* to apply *Wade* and *Gilbert* only to prospective line-ups, not to prospective trials. *Cf.* Lewis v. United States, 417 F.2d 755, 759 (D.C. Cir. 1969), cert. denied, 397 U.S. 1058, 90 S.Ct. 1404, 25 L.Ed.2d 676 (1970). This is the only reasonable reading of *Stovall*. To read *Stovall* differently would effectively make a meaningful retrial impossible in cases where the principal evidence is identification testimony procured as a result of a line-up, for it is impossible to repeat the original line-up years after it occurred. Thus we conclude that relator cannot benefit from the rulings in *Wade* and *Gilbert*. Moreover, relator makes no allegation, other than the absence of counsel, that the police station confrontation was fundamentally unfair. We therefore hold that relator was not denied his constitutional rights by the out-of-court identifications by Mrs. Toomer and Mr. Jones, and that their in-court identifications were not tainted.

Accordingly, we enter the following order.

## ORDER

Now, this 2nd day of July 1971, it is ordered that relator's petition for a writ of habeas corpus be and hereby is denied. There is no probable cause for appeal.